**TEXAS & P. RY. CO. v. SHORT.**
No. 1115.

Court of Civil Appeals of Texas. Eastland.
May 19, 1933.

Rehearing Denied July 10, 1933.

Douthit, Mays & Perkins, of Sweetwater, for appellant.

Grisham, Patterson & Grisham, of Eastland, for appellee.

FUNDERBURK, Justice.

This suit was brought subject to the provisions of the Federal Employers' Liability Act (45 USCA §§ 51–59) to recover damages for the death of Ruben A. Short in a railroad wreck at a "turnout" near Eagle Ford, Tex. On the trial the jury to whom special issues in response to the pleadings of the parties were submitted found that the defendant was guilty of negligence which was the proximate cause of the death of said Short in each of the following respects, namely: (1) In failing to require T. B. Petty, the engineer, to qualify according to rules of the company for the trip before he took charge of the engine; (2) in running the train at a speed of 50 miles per hour; (3) in failing to inform said T. B. Petty, the engineer, before putting him in charge of said train of a change made in the tracks near Eagle Ford since said Petty had previously made a trip over the road; (4) in failing to maintain a signboard near the track a sufficient distance west from the curve (where the wreck occurred) to indicate to its engineer the existence of the curve in time to warn him of the danger incident to running the train at a high rate of speed; (5) in furnishing to said engineer on the day of the accident a time-table which incorrectly showed the junction of the two tracks at a different place than where it in fact existed at a point near Eagle Ford; and (6) in the failure of said engineer to have the locomotive under control as it approached the end of the double track (i. e., the turnout).

Upon issues of contributory negligence, the jury found (1) that Short had not failed to exercise ordinary care to discover the turnout in sufficient time to have caused the speed of the locomotive to be reduced to a safe speed; (2) that said Short did not discover said turnout at a sufficient distance therefrom to have warned the engineer in time to have reduced the speed to such a rate as to have safely passed over said junction; (3) that de-

fendant had issued a bulletin, giving the location of said turnout at approximately 500 feet west of its depot at Eagle Ford; that Short did not read said bulletin, but such failure to read same was not one of the proximate causes of said injuries; (4) that Short told the engineer Petty that the end of the double track was just west of Dallas, but, in stating to said engineer that said turnout was just west of Dallas, he had not failed to exercise that degree of care that a reasonably prudent person would have exercised under the same or similar circumstances, and that such statement was not one of the proximate causes of said injuries; (5) that said Short, in making a trip from Fort Worth to Dallas and return on October 9th and 10th (a day or two previous to the accident), had not failed to exercise ordinary care to familiarize himself with the location of said turnout and degree of curvature thereof, and that such failure, if any, was not one of the proximate causes of said injuries; (6) that Short did not know the location of said turnout on the occasion in question, and that a reasonably prudent person under the same or similar circumstances would not have known of such location, and such failure was not one of the proximate causes of said injuries; (7) that Short stated to said engineer that said turnout was just west of Dallas, and that such statement led such engineer to believe that it was just west of Dallas and not just west of Eagle Ford, but that such statement was not the sole proximate cause of said injuries, nor was it one of the proximate causes of said injuries; (8) that defendant issued a bulletin about June 8, 1930, giving the location of said turnout at approximately 500 feet west of defendant's depot at Eagle Ford; that Short did not read said bulletin prior to the wreck, but such failure to read same was not a failure to exercise that degree of care that a reasonably prudent person would have exercised under the same or similar circumstances, and was not one of the proximate causes of said injuries. The total amount of damages found was $23,500. From a judgment for said sum in favor of plaintiff the defendant has appealed. A further statement of essential facts will be made in particular connections if found necessary.

The assignments of error are so numerous that we do not deem it advisable in this opinion to undertake to discuss them by separate mention or reference.

■ The court did not err, we think, in refusing to instruct a verdict for appellant. Whatever may be said of the sufficiency or insufficiency of the evidence bearing upon the issues of contributory negligence and assumed risk, neither contributory negligence nor assumed risk was, in our opinion, so conclusively shown by the evidence as a matter of law to justify a peremptory instruction.

The failure of Short, a day or so before

the wreck, to read the bulletin posted in the depot at Dallas, which contained the information that the position of the turnout was at the place where the wreck subsequently occurred, was certainly not contributory negligence as a matter of law. The theory advanced is that, in failing to read the bulletin, Short violated a rule of the company. When it is claimed that the violation of a rule contributed to an injury, it is not a question of negligence per se, but comes within the general rule that the question is one for the jury to determine whether such act was negligence; that is, whether under all the circumstances a reasonably prudent person would have done as the employee in question did. Galveston; H. & S. A. Ry. Co. v. Adams, 94 Tex. 100, 58 S. W. 831; Dunlap v. Northeastern R. Co., 130 U. S. 649, 9 S. Ct. 647, 32 L. Ed. 1058; Galveston, H. & S. A. Ry. Co. v. Sweeney, 14 Tex. Civ. App. 216, 36 S. W. 800; Bonner & Eddy v. Bean, 80 Tex. 155, 15 S. W. 798.

■ Even if such failure to read the bulletin was negligence or was sufficient evidence of negligence to require the submission of an issue to the jury, it was not the proximate cause of the injury. Every ground of negligence charged against the appellant and found in favor of the plaintiff by the jury intervened between Short's failure to read the bulletin and the wreck of the train in which he met his death. We think, as a matter of law, we are justified in the view that, in the light of all the facts presented by this record, a reasonably prudent person situated as was this fireman could not, at the time it was claimed he had an opportunity to read the bulletin but failed, have reasonably foreseen any such injury as likely to result from such omission.

■ The jury found that Short stated to the engineer Petty that the turnout was just west of Dallas, and that such statement led the engineer to believe that it was not just west of Eagle Ford, which the evidence shows to be 4.9 miles west of Union Terminal Depot in Dallas. The jury further found that, in making such statement, Short had not failed to exercise that degree of care that a reasonably prudent person would have exercised under the same or similar circumstances, and that it was neither the sole proximate cause nor one of the proximate causes of the injury. Appellant argues that such statement and the effect thereof as found by the jury was, as a matter of law, an intervening efficient cause of the accident, and hence the court erred in rendering judgment on the verdict in favor of appellee. The jury found that Short did not know the location of the turnout. We do not believe the evidence justifies the conclusion that he was under any duty to know its exact position. In a very reasonable sense it was true that Eagle Ford is just west of Dallas. We are not prepared to hold that the mere inquiry made by the engineer of

Short as to the location of the turnout and the answer given thereto show contributory negligence as a matter of law. As an issue of fact it was submitted to the jury and found in favor of appellee. If the transaction involved no negligence on the part of Short, then clearly we think it was not such an intervening efficient cause of the accident as a matter of law to render the negligence of the appellant too remote to subject it to legal liability.

We are inclined to think the evidence was sufficient to raise an issue of fact as to whether Short assumed the risk of defendant's negligence in failing to require the engineer Petty to qualify for the trip under the rule of the company prescribing as a qualification that he have made at least one round trip over the road within the preceding year. Petty, the engineer, testified that he so informed Short of his lack of qualification before beginning the trip in question from Fort Worth to Dallas. We have not deemed it necessary to go fully into this question because, if it should be granted that the court erred in not submitting this issue, it would not affect the disposition of the case, since we have concluded that, as to at least one of the other grounds of negligence, if not more, there was no evidence raising any issue of assumed risk. As to the ground of negligence consisting of the failure to have a warning sign a sufficient distance from the turnout to notify engineers in time to properly slow down their trains, we do not believe there can be said to have been any evidence to charge Short with either assumed risk or contributory negligence. He did not know the location of the turnout (so the jury found). There was no evidence that he knew it. It cannot be said, we think, that any of his duties as a fireman required him to know its exact position so as to give rise to the presumption that he knew it. We do not think it reasonable that a rule of the company requiring him, along with a great number of employees of varying duties and responsibilities, to read all posted bulletins, can be regarded as any evidence that he knew of the position of the turnout simply because such position was stated in a bulletin which he had but one opportunity to see, and which there was no evidence that he did see.

■ The failure of appellant to have the warning sign being negligence, the danger of such negligence was not one of the ordinary risks incident to Short's employment, which under the law he assumed. Risks from the negligence of the employer or a coemployee come within the classification of extraordinary risks. As said by the Supreme Court of the United States in Chesapeake & O. R. Co. v. Proffitt, 241 U. S. 462, 36 S. Ct. 620, 622, 60 L. Ed. 1102: "While an employee assumes the risks and dangers ordinarily incident to the employment in which he voluntarily en-

gages, so far as these are not attributable to the negligence of the employer or of those for whose conduct the employer is responsible, the employee has a right to assume that the employer has exercised proper care with respect to providing a reasonably safe place of work (and this includes care in establishing a reasonably safe system or method of work), and is not to be treated as assuming a risk that is attributable to the employer's negligence until he becomes aware of it, or it is so plainly observable that he must be presumed to have known of it. *The employee is not obliged to exercise care to discover dangers not ordinarily incident to the employment, but which result from the employer's negligence.*" (Italics ours.)

■ When Petty, the engineer, asked Short if he was acquainted with the road, the latter told him, so Petty testified, that he was not; that he had only been over it one trip. In our opinion, there is not only no evidence to show that Short knew of appellant's negligence in the respect now under consideration, but there is no evidence of any fact to raise a presumption that he so knew. The danger was not one so plainly obvious in the absence of such knowledge as to justify the holding that he must have known it. We therefore conclude that the error, if any, of the court in refusing to submit any issue of assumed risk was harmless.

■ After the case had been submitted to the jury, and before the verdict was returned, the trial judge stepped to the jury room door, which was in full view of the courtroom, wherein at the time was one of appellant's attorneys, with the judge and court reporter, and conveyed to one of the jurors the request of his wife to be told whether she should leave the car or take it home with her, and conveyed to said wife the juror's answer. One assignment of error complains of this action. We are of opinion that the facts do not disclose reversible error. Compton v. Jennings Lbr. Co. (Tex. Civ. App.) 295 S. W. 308; Wichita Falls Compress Co. v. W. L. Moody & Co. (Tex. Civ. App.) 154 S. W. 1032.

■ In connection with the special issues submitted to the jury, the court defined "proximate cause" as follows: "By the term 'proximate cause' is meant the efficient and producing cause but for which the injury would not have happened and which could have been reasonably foreseen as causing the injuries complained of, or some similar injury. There may be more than one 'proximate cause.' " Appellant contends that the definition of "proximate cause" was erroneous, and that the court further erred in refusing to define the terms "efficient cause" and "efficient and producing cause." The court's duty, if any, to define or explain said terms is imposed by R. S. 1925, art. 2189. The duty

being limited to the definition or explanation of "legal terms" such as "shall be necessary to enable the jury to properly pass upon and render a verdict on such issues," the first question is: Are the terms "proximate cause" and "efficient cause" and "efficient and producing cause" legal terms? We think the "legal terms" required to be explained or defined are only such terms as have in law and judicial proceedings a meaning different from their ordinary meaning and import. Panhandle & S. F. R. Co. v. Reynolds (Tex. Civ. App.) 33 S.W.(2d) 249; Elgin v. Banks (Tex. Civ. App.) 38 S.W.(2d) 149; Walker v. Tex. Mex. R. Co. (Tex. Civ. App.) 27 S.W.(2d) 574; Stanton v. Boyd (Tex. Civ. App.) 299 S. W. 321; Raley v. State, 47 Tex. Civ. App. 426, 105 S. W. 342; Johnson v. W. H. Goolsby Lbr. Co. (Tex. Civ. App.) 121 S. W. 883; Oliver v. Forney Cotton Oil, etc., Co. (Tex. Civ. App.) 226 S. W. 1094; 38 Cyc. 1688. A casual reading of the opinion in Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570, might give a contrary impression, but a careful reading convinces us that it was not intended to state anything to the contrary. Unless the real test be that suggested, there would exist no rule or guide by which it could be determined in advance of a decision of a court of last resort that any particular term used in special issues was or was not required to be explained or defined.

It would hardly be contended, we think, that the court should define or explain the word "cause" in the term "proximate cause." Its meaning in law and judicial proceedings is the same as its usual and ordinary meaning. The same is true, we think, of the words "efficient" and "producing." Nor does the combination "efficient cause" or "producing cause" or "efficient and producing cause" change such fact. As terms they are good examples of tautology, about on a parity with "widow woman," "tooth dentist," "shoe cobbler," etc. If a cause is not "efficient" (effective), it is simply not a cause. If a cause is not producing (of an effect), then it is not a cause. "Cause" and "producing" in the sense of these words are synonymous. It is believed that these terms could neither aid nor confuse a jury.

The term "proximate cause" is different. "Proximate" in its ordinary significance means "nearest; next immediately preceding or following." Webster's International Dictionary. When in law and judicial proceedings the word is used to modify "cause" and to constitute the term "proximate cause," it has a peculiar and different meaning. It therefore is required by said statute to be explained or defined. As said by Judge Gaines in Gulf, C. & S. F. Ry. Co. v. Rowland, 90 Tex. 365, 38 S. W. 756, 757: " 'Proximate cause,' literally, means the cause nearest to the effect produced, but in legal terminology the terms are not confined to their

literal meaning." As a legal term it does not necessarily mean a cause "nearest" or "next immediately preceding" a particular result. Just so "proximate result" in legal parlance does not necessarily mean the result "nearest" or "next immediately * * * following" a particular cause.

What then, in view of these observations, is necessary for jurors to know about the meaning of "proximate cause" as a legal term, in addition to what they are presumed to know of the meaning of "cause?" The question must be answered in the light of the present legal requirement that, in cases submitted on special issues, the giving of correct definitions of legal terms or explanations of their meaning is mandatory, but charges and instructions, general or special, on the law of the case, are prohibited. Where it is the function of the jury to apply the law to the facts as found by them, and the duty of the court to charge or instruct the jury as to the law in order to enable them to do so, the importance of informing the jury as to the meaning and effect of "new and independent cause," or, as otherwise denominated, "efficient intervening cause," or inform them that there may be more than one proximate cause of the same injury, is readily apparent. But in cases like this, where the jury is not to be informed as to the law, but its sole function is confined to a finding of the facts, including findings of whether particular acts or omissions were or were not each proximate causes of a particular injury, it is not believed that such information concerning the law of negligence is necessary to enable them to understand what the words "proximate cause" mean.

We think it was sufficient to inform the jurors to the effect that, for any of the several acts or omissions to constitute a proximate cause of the injury as inquired about, it was necessary that same in fact have been a cause of the injury which at the time should reasonably have been foreseen as likely to cause some such injury. The essentials were stated by Judge Gaines in Texas & P. Ry. Co. v. Reed, 88 Tex. 439, 31 S. W. 1058, 1060, in approving a special charge, as follows: "You will find for the defendant unless you believe from the evidence that the injuries sustained by the plaintiff were the proximate result of the negligence charged; *that is to say, unless, in view of all the facts and circumstances at the time, such injuries might have been reasonably foreseen as likely to ensue from the alleged negligence, if any.*" (Italics ours.) The test of liability for negligence as dependent upon its being the proximate cause of the injuries as stated by said court in Missouri, K. & T. Ry. Co. v. McFadden, 89 Tex. 138, 33 S. W. 853, 855, embodied the really essential meaning of "proximate cause" in the following: "*It ought to have been reasonably anticipated, under the cir-

cumstances, that the cotton would probably be destroyed by fire.*" (Italics ours.) In Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284, 285, 31 Am. St. Rep. 17, the meaning of "proximate cause" was made plain in the following: "By 'proximate cause,' we do not mean the last act of cause, or nearest act to the injury, but such act, wanting in ordinary care, as actively aided in producing the injury, as a direct and existing cause. It need not be the sole cause, but it must be a concurring cause, *such as might reasonably have been contemplated as involving the result, under the attending circumstances.*" (Italics ours.)

Also, in Gulf, C. & S. F. Ry. Co. v. Rowland, supra, the court, after stating as before quoted, that "'proximate cause,' literally, means the cause nearest to the effect produced, but in legal terminology the terms are not confined to their literal meaning," stated the legal meaning as follows: "Though a negligent act or omission be removed from the injury by intermediate causes and effects, yet, if the party guilty *ought reasonably to have foreseen the ultimate .consequence such negligence is deemed in law the proximate cause of the injurious effect.*" (Italics ours.)

The definition complained of in the instant case informed the jury that, for each of the several causes inquired about to be a proximate cause (whether same was or not being the question that was to be determined from the evidence), it must have been a cause but for which the injuries would not have happened and which could have been reasonably foreseen as causing the injuries complained of or some similar injury. This, we believe, was sufficient. Stripped of nonessentials, we think it would be a sufficient definition to say: "Proximate cause is a cause which should reasonably have been foreseen as likely to cause the injury in question or some similar injury." To say of a cause of an injury that it is one "but for which the injury would not have happened" is to repeat something already included in the usual and ordinary meaning of the word "cause." To say that the cause of an injury must operate in a natural and continuous sequence is but to repeat what is already implied in the word "cause"; namely, that it extends to the result it produces. To say that the natural and continuous sequence in which the cause must operate to constitute "proximate cause" must be "unbroken by some new and independent cause" or "efficient intervening cause" is not only to repeat what is implied in the word "cause," but is, in effect, to give the jury a special charge on the law of negligence, which is prohibited and in no sense essential to enable the jury to understand the meaning of the term "proximate cause." In addition to the authorities cited, we think our conclusions are, to a greater or less ex-

tent, supported by the following decisions: Southern Ice & Utilities Co. v. Richardson (Tex. Civ. App.) 60 S.W.(2d) 308; Texas & P. R. Co. v. Bufkin (Tex. Civ. App.) 46 S.W.(2d) 714; West Texas Coaches v. Madl (Tex. Civ. App.) 15 S.W.(2d) 170; Gulf, C. & S. F. R. Co. v. Locker (Tex. Civ. App.) 264 S. W. 595; Texas & N. O. Ry. Co. v. Jackson, 51 Tex. Civ. App. 646, 113 S. W. 628; Gulf, C. & S. F. R. Co. v. Ballew (Tex. Civ. App.) 39 S.W.(2d) 180; Texas & P. R. Co. v. Short (Tex. Civ. App.) 58 S. W. 56, 57; Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Seale v. Gulf, C. & S. F. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602.

█ We have examined the several assignments of error complaining of the argument of appellee's counsel. Some of the argument was irrelevant to the real issues. In some of the instances complained of, it was more dramatic than we think comports with the best practice. The most objectionable part of all the argument complained of, we think, was the following: "Give her what you would have under the Golden Rule, or treat her as you would wish to be treated under the same or similar circumstances." In Rio Grande, etc., R. Co. v. Dupree (Tex. Civ. App.) 35 S.W.(2d) 809, 814, an assignment of error was overruled predicated upon the following argument: "Gentlemen of the Jury, the failure of this crew to blow the whistle and ring the bell has taken a life. Mrs. Dupree has lost her husband and her sons a father. It might have been you. It might have been me. Some of you gentlemen have sons. It might just as well have been your son. Remember that when you render your verdict, to do unto others as you would have them do unto you." (Italics ours.) The Court of Civil Appeals was of opinion that said remarks "exceeded the bounds of strict propriety," but held that same did not constitute reversible error because of the court's instruction to the jury not to consider same. In the Supreme Court [55 S.W.(2d) 522, 526], this reason for holding the argument was not reversible error was disapproved in the following language: "In passing on the issue as to whether this argument presents reversible error, we wish here to state that we adhere to the rule that, if the argument is improper, it must work a reversal unless we are able to say that the question of injury is free from doubt in the mind of the Supreme Court itself. Robbins

v. Wynne (Tex. Com. App.) 44 S.W.(2d) 946." (Italics ours.) It was thereupon declared that the argument was not improper. If that argument was not improper, neither is this. In Southern Ice & Utilities Co. v. Richardson, 60 S.W.(2d) 308, we concluded to treat this late expression as indicating that former decisions to the contrary are no longer to be regarded as authority. In the absence of any reliable rule which would enable us to test the legality of the argument by application of recognized principles, we are unwilling to hold that the argument was improper, and therefore reversible error.

█ There was no error, we think, in the action of the court in refusing to submit the issue of unavoidable accident. The argument upon this point is that, since Short told Petty, the engineer, that the turnout was just west of Dallas, and the engineer understood by that statement that it was not just west of Eagle Ford, and since Petty testified that, but for such statement and belief thereof, he would not have run at such a speed as to be unable safely to pass over the curved track at the turnout, then, even conceding that Short, in making such statement, was not guilty of contributory negligence, still it may have exonerated the appellant from negligence and therefore raised the issue of unavoidable accident. But, as we see it, the only possible causes involved were the various acts of negligence charged to the defendant and Short. The direct and immediate cause of the injuries was shown by the undisputed evidence. It consisted of running the train at too great a speed to pass over the curved track at the turnout with reasonable safety. We think the undisputed evidence showed as a matter of law that the injuries were the result of defendant's negligence for which the defendant was liable in damages, unless excused by the contributory negligence of the deceased. If Short was not guilty of contributory negligence, thereby relieving appellant of liability for its negligence, then we do not believe that the acts of Short in question can reasonably be regarded as an unavoidable accident upon the theory that it constituted an efficient intervening cause having the effect of rendering appellant's negligence too remote.

Having concluded that no reversible error has been shown, and that the judgment of the court below should be affirmed, it is accordingly so ordered.