## PANHANDLE & S. F. RY. CO. v. MILLER.
### No. 1133.

Court of Civil Appeals of Texas. Eastland.
June 2, 1933.

Rehearing Denied Nov. 17, 1933.

See, also, 44 S.W.(2d) 790.

Douthit, Mays & Perkins and Ellis K. Douthit, all of Sweetwater, for appellant.
C. F. Sentell, of Snyder, for appellee.

FUNDERBURK, Justice.

J. D. Miller sued Panhandle & Santa Fe Railway Company for damages as the alleged result of negligence in the handling of a shipment of 113 head of cattle from Seagraves, Tex., to Chautauqua, Kan. The jury found that defendant was guilty of negligence consisting of acts and omissions, each a proximate cause of damages aggregating $385 as follows: (a) Unloading cattle into muddy pens; (b) failure to afford plaintiff a reasonable opportunity to feed cattle en route; (c) overcrowding stock pens at Independence, Kan.; (d) loading back in cars of yearlings and two year old steers mixed. The jury further found (e) that "the actual or intrinsic value" at Chautauqua, Kan., of a yearling which died in the pens at Independence, Kan., would have been $50 if it had been delivered in the condition and at the time it should have arrived at Chautauqua, Kan.; (f) that the actual or intrinsic value at Chautauqua, Kan., of a cow which died near the unloading pens in Chautauqua, Kan., was $75; (g) that the actual or intrinsic value of a cow which it was alleged was "skinned and bruised and crippled and mashed and bones broken" would have been $75 at Chautauqua, Kan., in the condition and at the time she should have arrived, but was $40; (h) that a certain yearling which was alleged to have been "skinned, bruised, crippled, mashed and bones broken," would have been of the actual or intrinsic value of $50 at Chautauqua, Kan., in the condition and at the time it should have arrived, but was of the actual or intrinsic value of $25; (i) that the actual or intrinsic value of the remaining 100 head of cattle at Chautauqua would have been $6,070, in the condition and at the time they should have arrived, but were of the actual or intrinsic value of $5,570.

From a judgment rendered in accordance with said verdict the defendant has appealed.

■ In connection with the special issues submitted, the court defined "proximate cause" as "that cause which directly produces the injuries and damages, and without which the injuries and damages would not have happened, and the happening of which might reasonably have been contemplated as a natural and probable consequence." To define the term "proximate cause" so as thus to tell the jury that it is a cause "which directly produces the injuries and damages" was, in effect, to inform the jury that the words were used in their usual and ordinary sense. This, of course, was incorrect, since, if that were true, "proximate cause" would not be a legal term requiring definition or explanation of its meaning. This error in the definition is not complained of, and besides was in favor of appellant. Texas & P. Ry. Co. v. Bufkin (Tex. Civ. App.) 46 S.W.(2d) 714.

One of the characteristic differences between the meaning of "proximate cause" as a legal term and its common and ordinary meaning is that the former need not be the direct and immediate cause. Gulf, C. & S. F. Ry. Co. v. Rowland, 90 Tex. 365, 38 S. W. 756. On the contrary, it may operate through one or more intervening causes. The only other distinguishing characteristic deemed necessary for a jury to know in order to enable them to answer whether or not any particular act or omission was or was not a proximate cause of a particular injury is that such act or omission should reasonably have been foreseen as likely to cause some such injury.

■ Appellant complains of the definition given in two respects; namely, (1) "because it fails to apply the standard of ordinary care and prudence to the element of foreseeability," and (2) "because it wholly ignores the element of causation and wholly ignores the element of interruption of causation." We are unable to sanction a proposition that "ordinary care and prudence" is an element of "foreseeability" which in turn is an element of "proximate cause." "Ordinary care" is the test of the existence or not of negligence. Any inquiry as to proximate cause presupposes the existence of negligence, and therefore, of course, the existence of a failure to exercise ordinary care. We think that, after a jury has determined issues of negligence and therein have found that, in certain acts or omissions, the defendant failed to exercise that degree of care and prudence which an ordinarily prudent person would have done under the same or similar circumstances, it is sufficient, in order to enable them to further determine whether such acts or omissions were proximate causes of certain injuries, that they be informed that, to be such, the acts or omissions must have been such that it could reasonably have been foreseen that some such injury would likely result. The definition in question did that. It would have been better for the definition or explanation to have advised the jury to the effect that the proximate cause was not necessarily the immediate cause. We cannot say that even that was not implied in the definition given.

■ That which is denominated in the second objection as "the element of causation," whatever that may mean, must, it seems to us, be included in the usual and ordinary meaning of the word "cause," which requires no definition or explanation of its meaning. As to "interruption of causation" referred to as an element of proximate cause, it occurs to us that, when a cause is interrupted, it simply ceases to further operate as a cause. A cause interrupted before any injury therefrom resulted could not be a cause of anything thereafter happening. If, as we presume, the point of the criticism is that the

jury should have been informed that, for a cause to be a proximate cause, its operation must have been unbroken by any "new and independent cause," or, as otherwise sometimes called "efficient intervening cause," then it is our opinion that, however proper and necessary it would have been for the court to instruct, the jury concerning the meaning, nature, and effect of such term or terms, had it been the duty of the jury to determine a question of legal liability, it was not necessary that they be so instructed in a case like this, submitted upon special issues. That a "new and independent cause" or "efficient and intervening cause" is not an element of proximate cause appears quite certainly when we reflect for a moment that such may in itself be a proximate cause. A thing can never, of course, be an element of itself. The subject of this assignment of error has recently been considered by us in the case of Texas & P. Ry. Co. v. Short, 62 S.W. (2d) 995, to which we refer for a further discussion of the reasons why we think the definition in question is sufficient.

■ We also overrule the contention that the court was under the duty to define or explain the phrase "natural and probable consequence." In our opinion the phrase is not a legal term within the meaning of the statutory requirement that legal terms be defined or explained. Besides, in our opinion, the use of such phrase forms no essential part of the definition of proximate cause. If an act or omission should have reasonably been foreseen as likely to cause some injury to plaintiff or to a class to which he belongs, it is wholly unnecessary that such injury should have been foreseen as a natural and probable consequence of such act or omission. True, in the law of liability for negligence, when an act or omission is not wrongful except as the one responsible therefor should, in the exercise of ordinary care, have foreseen that it would likely cause injury, it is only such "natural and probable consequences" thereof to which the liability extends, yet it does not follow that, when the existence of negligence is determined under other issues, and the remaining question is whether same be a proximate cause of the injuries complained of, the jury must be told that the proximate cause is one from which the injuries should have been reasonably foreseen "as a natural and probable consequence." In other words, it is sufficient if some such injury could be reasonably foreseen as likely to result.

■ One issue submitted to the jury was: "What do you find from a preponderance of the evidence would have been the actual or intrinsic value, if any, of the yearling which plaintiff alleges as skinned and bruised and crippled and mashed and bones broken at Chautauqua, Kansas, in the condition and at the time it should have arrived?" To its submission appellant objected as follows: "Because the same is a comment on the weight of the evidence unduly and unwarrantedly emphasizing plaintiff's allegations with reference to the yearling being skinned, bruised, mashed and bones broken at Chautauqua, Kansas, and said charge in effect requires the jury to find in so assuming that the yearling was injured as stipulated." Although the shipment involved injuries to 113 cattle, the pleadings presented an issue peculiar to this one yearling. It was therefore necessary in the submission of such issue to identify the yearling. It was identified as the one concerning which certain injuries were alleged. We are unable to see that this was error. It would have been difficult and hazardous to have attempted to identify the yearling by reference to the evidence. The issue, so far as we can see, assumed no issuable fact as true, and we believe was not subject to any of the objections urged.

■■ The court erred, we think, as contended by appellant, in permitting plaintiff, Miller, to testify that one claiming to be the freight agent at Wellington told him that plaintiff "ought to make it, easy enough, to Chautauqua without having to unload," and that, in reliance upon such statement, he did not insist on unloading and feeding the cattle at Wellington, which he otherwise would have done. The point of the objection was that it was not shown to be within the scope of authority of such agent to make such representation. Texas & P. Ry. Co. v. Cauble (Tex. Civ. App.) 168 S. W. 369; Quanah, A. &. P. Ry. Co. v. Galloway (Tex. Civ. App.) 140 S. W. 368; Hovey v. Halsell-Arledge Cattle Co. (Tex. Civ. App.) 176 S. W. 897; Kansas. City M. & O. Ry. Co. v. Corn (Tex. Civ. App.) 186 S. W. 807; Woodward-Wanger Co. v. Nelson (Tex. Civ. App.) 11 S.W.(2d) 371; Texas & P. Ry. Co. v. Boaz (Tex. Civ. App.) 22 S.W.(2d) 492. In the statement in appellant's brief upon this point it is said: "It was in evidence that plaintiff had executed a thirty-six hour release, the purpose of which was to authorize the carrier to retain the cattle in the cars for a period of thirty-six hours without releasing them therefrom any earlier for food, water and rest." And then closes the statement with the following: "It was nowhere contended that the shipment was confined in the cars for a period in excess of thirty-six hours, but it was vigorously contended that all of the damage resulted to the shipment by reason of them being unloaded at Independence and the lack of facilities at said place to take care of same at that point." In view of this statement, which we take to be correct, it seems to us that the testimony in question was wholly immaterial. Nothing in the statement under the proposition suggests its materiality or that it was prejudicial. It seems to us that the error in question should be held to be harmless.

The next and final contention is that the court erred in permitting the plaintiff to testify as to the actual or intrinsic value of the cattle at Chautauqua, Kan., he having testified that the cattle had a market value there. The rule is, as contended by appellant, that, where the cattle have a market value, that controls, and evidence of actual or intrinsic value is inadmissible. Panhandle & S. F. Ry. Co. v. Snodgrass (Tex. Civ. App.) 278 S. W. 337; Kansas City, M. & O. Ry. Co. v. Moore (Tex. Civ. App.) 11 S.W.(2d) 335. We do not believe, however, that the record supports appellant's contention. It is true Miller did at first testify that the cattle had a market value, but he later admitted that in so testifying he was in error and corrected it by saying that the cattle did not have a market value there. It was evidently the theory of his suit that they had no market value at Chautauqua. He only alleged the actual or intrinsic value. Giving full recognition to the rule, we think, when plaintiff admitted his error and stated that the cattle had no market value at Chautauqua, the prima facie effect was the same as if he had never so testified, but had testified that they had no market value there. His testimony as to actual or intrinsic value was therefore properly admitted.

Being of opinion that no reversible error is shown, and that the judgment of the court below should be affirmed, it is accordingly so ordered.