**YOUNG v. MASSEY et al.**

No. 10208.

Court of Civil Appeals of Texas. Galveston.

May 29, 1936.

Rehearing Denied June 11, 1936.

King, Wood & Morrow, and H. E. Cox, all of Houston, for appellant.

Monteith, Neathery & Cutrer, W. E. Monteith, Sam Neathery, and Lewis Cutrer, all of Houston, for appellees.

LANE, Justice.

This suit was instituted by C. R. Massey, individually, and as father and next friend of Paul Massey, a minor, against J. A. Young, doing business under the trade-name of Young Motor Freight Lines, for the recovery of $30,260 claimed as damages because of injuries suffered by Paul Massey while riding a bicycle at the intersection of Conti and Maury streets, in the city of Houston, Harris county, Tex., at which place he was involved in an accident with one of the defendant's trucks; it being contended by the plaintiff that the injuries to Paul Massey were due to the negligence of the agent, servant, and employee of the defendant in the operation of the defendant's truck at such place, the plaintiff setting out in his petition in the trial court various alleged acts of negligence on the part of defendant's agent in the operation of such truck, and alleging that such acts of negligence were a proximate cause of the injuries to the minor plaintiff.

Plaintiff further alleged that the driver of the truck negligently failed to use and exercise ordinary care and all reasonable means at hand consistent with the safety of the truck and driver thereof to avoid the collision, after making actual discovery of the danger and imminence thereof, and that Paul Massey was in a position of peril from which he could not, or probably would not, free himself in time to escape the collision.

The defendant answered by a general denial, a general plea of contributory negligence upon the part of the minor plaintiff, and a plea of unavoidable accident.

Upon the conclusion of the evidence the cause was submitted to the jury upon special issues, in answer to which the jury found:

1. That the defendant's driver was operating its truck at the time of the accident at a speed in excess of 20 miles per hour. That this was negligence and a proximate cause of the accident.

2. That the defendant's driver was operating its truck at a speed which was unreasonable and dangerous at the time of the accident, and that this was negligence and a proximate cause of the accident.

3. That the defendant's driver failed to give warning of the approach of the truck prior to the accident, and that this was negligence and a proximate cause of the accident.

4. That the defendant's driver failed to keep a reasonable lookout immediately prior to the accident and that this was negligence and a proximate cause of the accident.

5. That the defendant's driver failed to have his truck under reasonable control prior to the accident, and this was negligence and a proximate cause of the accident.

6. That the defendant's driver was negligent in failing to incline his truck to the left immediately prior to the accident, and that this was a proximate cause thereof.

7. That the defendant's driver discovered the peril of the minor plaintiff in time to have prevented the accident.

8. That the minor plaintiff did not fail to keep a reasonable lookout prior to the accident.

9. That the minor plaintiff was not operating his bicycle at a negligent rate of speed prior to the accident.

10. That the minor plaintiff was not negligent in failing to turn his bicycle to the left prior to the accident.

11. That the minor plaintiff was not negligent in failing to yield the right of way at the intersection of Maury and Conti streets.

12. That the minor plaintiff did not fail to slacken the speed of his bicycle when approaching the intersection of said streets.

13. That the minor plaintiff did not see and discover the defendant's truck approaching him in time to have stopped his bicycle prior to the accident.

14. That the minor plaintiff did not see and discover the defendant's truck approaching him in time to have slackened the speed of his bicycle prior to the accident.

15. That the injuries sustained by the minor plaintiff were not the result of an unavoidable accident.

16. That the minor plaintiff was damaged in the sum of $7,500 because of the accident.

17. That the adult plaintiff was damaged in the sum of $1,250 because of the accident.

Upon the verdict of the jury, judgment was entered by the court in favor of the plaintiffs and against the defendant for the sum of $8,750.

Appellant filed his motion for a new trial, alleging in part that since the trial of the case he had discovered that one P. H. Mayfield saw the accident which resulted in the injury to Paul Massey and that Mayfield would have testified in the case had he been present as a witness, and will now, if called as a witness, testify: "That he witnessed the entire accident and that the bicycle upon which the minor plaintiff was riding slipped and the plaintiff, Paul Massey, fell directly in front of defendant's truck which was going south on Maury Street at a very slow rate of speed. That he had noticed the minor plaintiff, Paul Massey, proceeding in an easterly direction on Conti Street prior to the accident, and that when the said Paul Massey reached the intersection on Maury Street with Conti Street he made a 'U' turn in said intersection, turning back in a westerly direction on Conti Street, and that just as he had completed said turn his bicycle slipped out from under him and he fell immediately in front of the defendant's truck. That the defendant's truck did not strike the bicycle or the minor plaintiff, and that the defendant's truck did not knock the minor plaintiff down, the minor plaintiff falling to the pavement when his bicycle slipped from under him. That when he first saw the truck coming into the intersection of Conti Street and Maury Street it was not travelling over ten miles per hour. That in his judgment the truck did not go over eighteen inches after the boy fell. That the truck had entered the intersection of the streets mentioned prior to the time the boy fell in front of it."

That when the defendant, J. A. Young, and his representatives knew that a laundryman was supposed to have witnessed the accident above mentioned, they did not know the name of the laundryman nor the laundry with which he was connected. That prior to the trial of this cause they made every effort to locate the laundryman who had witnessed the accident, but did not succeed in locating him until after the trial, and until after the jury had returned its verdict herein. That the defendant herein has a meritorious defense in this cause.

It is further stated in such motion that the testimony of Mayfield is material, in that upon the trial no person testified to the manner in which the accident occurred except Paul Massey, the injured boy, and the driver of the truck; that so far as he was able to ascertain, Mayfield is the only disinterested person who saw the accident when it occurred and could testify as to the manner in which it happened; that a new trial will probably result in a different verdict being returned by a jury sitting to try the case; that defendant and his representatives have exercised due diligence to procure the testimony of Mayfield prior to the trial. The motion was duly verified by the attorney for defendant.

Attached to said motion as a part thereof are the following affidavits:

"My name is P. M. Mayfield. I am 56 years of age. I reside at 2431 Clark Street, and am owner of the Mayfield Laundry at 2431 Clark Street.

"On or about March 26th, 1933, at about 11:30 A. M., I was driving east on Conti Street right next to the southwest corner of the intersection of Maury and Conti Streets. I was driving my car at a slow rate of speed when a messenger boy passed me going into the intersection of Maury and Conti Streets and made a complete 'U' turn, cutting back towards the direction he was coming, and his bicycle slipped and fell hitting the iron drain cover next to the car tracks, and this bicycle falling directly in front of a truck going in a south direction on Maury Street, which truck was driven by a negro and at a very slow rate of speed and which had already entered the intersection previous to the time the boy ran in front of it and slipped on his bicycle. I do not know how fast the boy was riding the bicycle, but undoubtedly was turning too fast which caused him to slip and fall. This boy fell immediately under the right front wheel of this truck and the driver stopped this truck within a very short distance and directly on top of the boy's bicycle, and the bicycle pinned the boy to the pavement. The truck did

not strike the bicycle or knock the boy down. When I first saw it coming into the intersection it was not traveling over ten miles per hour and that was just before the boy made the turn into the truck. When he fell I would judge that this truck did not go over eighteen (18) inches, and this boy fell approximately eighteen (18) inches in front of the truck. I immediately got out of my car and went over to the place where this accident had occurred and helped get the truck off of the bicycle. A Mr. Musslewhite got a wrecker and tried to lift up the truck, but the rope broke and the truck fell about one foot back in the place where it was resting on the bicycle and had the boy caught, undoubtedly hurting him considerably, and it is my opinion that by this truck falling caused as much injury to the boy as the actual running up on the bicycle did, and maybe more. We then lifted the truck up by man power and released the boy from his bicycle.

"I was in good position to see this accident as it happened practically across Conti Street from me and I was in a good position to see everything. This accident was not caused by any careless driving of the truck and the negro driver did everything possible to avoid this accident, he had no possible chance of avoiding it in any way, the boy on the bicycle was entirely to blame if anyone was, however, it was unavoidable inasmuch as it happened so suddenly and by this boy losing complete control of his bicycle, it slipping and falling on top of him and directly in front of the truck.

"[Signed] P. M. Mayfield."

"Before me, the undersigned authority, on this day personally appeared Elmer G. Gunn, known to me to be a credible person, who, being by me duly sworn, upon his oath says:

"That he is an independent adjuster holding himself out to the general insurance public as an adjuster representing any one desiring the services of an adjuster or an investigator. That he is not an employee of Lloyds America, at San Antonio, Texas; that on or about April 13, 1934, he was instructed by Lloyds America to assist them in locating a witness in Houston, Texas. This witness was supposed to have seen an accident, which occurred on March 6, 1933, at the intersection of Conti and Maury Streets, in the City of Houston, Texas, between a truck operated by Young Motor Freight Line and a boy by the name of Paul Massey. Pursuant to this instruction, I proceeded to Houston, Texas, and worked on April 14, 15, and 16, 1934, in an effort to locate the laundry driver, who was supposed to have seen this accident.

"In this investigation I placed an Ad in the Houston Chronicle on Sunday, April 15, 1934, offering a reward for the witness who had seen such accident; that he further contacted a number of laundries in Houston, Texas, during the three day period, above referred to, endeavoring to locate their driver, who was a witness to this accident; further affiant says that he employed one F. N. Clifford, whose address is Park Hotel, 610 Louisiana Street, Houston, Texas, to assist in locating this witness; this affiant knows of his own knowledge that said F. N. Clifford did telephone and personally called upon a number of laundries in Houston, Texas, in an effort to locate certain witness.

"Affiant further in pursuance of this assignment, after returning to his office in Austin, Texas, wrote a letter to the following list of laundries in Houston in an effort to locate this witness." (Here a list of 46 laundries in Houston, with the address of each, is set out. Such list does not include the Mayfield Laundry.)

Affiant Gunn further stated that the letters mentioned were delivered to the addressees; that by correspondence with one F. N. Clifford of Houston he made inquiry about the witness Mayfield, but that he was unable to locate the witness until the afternoon of May 23, 1934, and after the trial of the case had on the 21st day of said month. (The dates of the correspondence with Clifford are not shown.) Affiant states that he did not know this case was set for trial on the 21st of May; that he lived in Austin, Tex.; that his business is that of general casualty and compensation service; that he worked on the 14, 15, and 16 of April, 1934, in Houston, endeavoring to locate the wanted witness but was unable to locate him until the 23d of May, 1934; that on the 6th day of March, 1933, a truck of the Young Motor Freight Lines and Paul Massey collided at the intersection of Conti and Maury streets in Houston; that some man, who was driving a laundry car, was a witness to the accident and gave the driver of the truck of the Motor Company his card, but that the driver had lost the card; that he inquired of many persons whom he thought might

be able to locate the witness for him, but none of them succeeded in doing so.

F. N. Clifford, of Houston, by affidavit attached to the motion, stated he was employed by the Motor Carrier's Insurance Agency in Austin; that a part of his work was that of an investigator; that on April 14, 1934, he had a conference with Elmer Gunn of Austin and H. E. Cox, an attorney, with reference to the case of Massey against Young Motor Freight Lines, who told him about the accident which occurred on March 6, 1933, at the corner of Conti street and Maury street; that Gunn and Cox employed him to try to find out the name of the driver of a laundry car they claimed to have seen the accident and whose name they did not know, and to locate him; that he did his best to locate the name and whereabouts of the wanted witness but failed in both.

The affidavits of two other witnesses were attached to the motion showing that they had made efforts to locate the wanted witness and had failed to do so.

The affidavit of Ed Williams, the driver of the truck in the collision, was attached to the motion, and is as follows: "My name is Ed Williams. I am employed by Mr. J. A. Young, operating under the name of J. A. Young Motor Freight Lines. I was driving the truck which was involved in the accident with Paul Massey. I was working under direct supervision of Mr. J. C. Tips at that time. At the time of the accident a gentleman driving a laundry delivery car came up to me and told me that he had seen this whole accident and that I was absolutely not at fault. He told me that he thought perhaps they would try to blame me in the matter and if they did he would be willing to testify in court, that I was not at fault, or words to that effect. This gentleman gave me his card with his name on it and I took this card to the office and delivered it to Mr. J. C. Tips. Later I learned that Mr. Tips lost the card. I could not remember the name of the gentleman nor the laundry with which he was connected and Mr. Tips was unable to remember his name or the laundry. Mr. Tips sent me back to the scene of the accident about ten days after it occurred and had me talk with the people around the scene of the accident in an effort to find out the name of the laundry driver or the laundry with which he was connected. However, I could get no information with reference to this man. I still do not know the name of the laundry man nor the laundry with which he was connected though Mr. Tips tells me they have located the man."

There was also attached to the motion the affidavit of H. E. Cox, attorney for the defendant in this case, in which affidavit such attorney states: "I have heard that a laundry driver was supposed to have witnessed the accident. The driver of Mr. Young's truck told me that a laundry driver saw the accident and gave him his card. That he delivered this card to Mr. J. C. Tips, his employer, and who was then connected with Mr. J. A. Young. Mr. Tips told me that this was a fact but that he had lost the card. Ever since this case has been in my hands I have been making an effort to locate this laundry driver, and at different times have had Mr. A. F. Meyer, Mr. Elmer Gunn, Mr. F. N. Clifford, and Mr. Hillendahl, all insurance investigators, try to locate the man. We were never able to learn his name or get any line on him whatever until after the trial of this cause and until after the jury had returned its verdict."

In a sworn contest of the motion for new trial it is stated, among other things, that the affidavit of P. M. Mayfield shows that his testimony, if received, would be merely cumulative of the testimony given upon the trial of the case by Ed Williams, the truck driver, and is almost the same as given by Williams on the two trials of the case; that the collision in question occurred on the 6th day of March, 1933; that by the motion for new trial and the affidavits attached thereto it is shown defendant had knowledge brought to it on the day of the collision that a man driving a laundry car came up to Williams, the driver of defendant's truck, and told Williams that he had seen the collision and that Williams was not at fault, and gave Williams his card with his name on it, and that such card was later given to J. C. Tips, manager of the defendant, on the same day; that it is shown that from December, 1933, no effort was made to locate Mayfield prior to the first trial of the case had on the 26th day of March, 1934, which resulted in a mistrial; that after such mistrial the case was set for a second trial, and went to trial on the 21st day of May, 1934.

It was further undisputedly shown by the sworn contest that the Mayfield Laundry, owned by the wanted witness, is located on

Clark street and has been so located for eight years, and is listed in the classified list of laundries in the telephone directory of Houston; that with one exception it is the nearest laundry to the scene of the accident; that Clark street runs into Lyons avenue, a continuation of Conti street on which the collision occurred; that the Mayfield Laundry serves that portion of Houston along Clark street, Lyons avenue, and Conti street; that defendant and its agents and attorney were negligent in not consulting such telephone directory, which, had they done so, would have informed them of the location of the Mayfield Laundry and the witness Mayfield.

Affiant further states that on the two trials of the case Williams, the driver of defendant's truck, testified that he had no conversation with any one on the occasion of the collision other than that some one in the crowd told him to hold the truck.

The affidavit of one R. G. Shebe is attached to said contest, wherein he states that the Mayfield Laundry is listed in the classified list of laundries in the telephone directory of Houston, which shows the location of the Mayfield Laundry and gives the phone number of the same; that such laundry was listed in said directory that was issued in November, 1933.

The affidavit of Sam Nethery was attached to the contest, wherein he stated that he talked to the driver of defendant's truck and that said driver stated to him that he had no conversation with any one at the scene of the collision.

Though it was shown that there were two trials of the case, it is not shown that any motion for a continuance was asked so as to procure the testimony of the wanted witness.

The court overruled the motion for new trial, and appellant assigns such action of the court as reversible error.

■■ We overrule the assignment. The granting of a new trial on the grounds of newly discovered evidence is within the sound discretion of the court, and we are of opinion that the record in the present case shows no abuse of discretion in overruling the motion for new trial. Allen v. Texas & N. O. Ry. Co. (Tex.Civ.App.) 70 S.W.(2d) 758, and authorities therein cited; vol. 3, § 761, p. 1085, Texas Jurisprudence; p. 1083, same volume; Hess v. Rouse (Tex. Civ.App.) 22 S.W.(2d) 1077; Weeks v. Lipp (Tex.Civ.App.) 48 S.W.(2d) 716; Alford v. Cole (Tex.Civ.App.) 65 S.W.(2d) 813.

In volume 31, Texas Jurisprudence, § 75, p. 84, it is said that according to the general rule pertinent to all applications for new trial, a motion for new trial upon the ground of the absence of witnesses is addressed to the sound discretion of the court. Ordinarily the motion will be denied if it appears that the absence of the witness was not made a ground of a motion for a continuance, and a failure to make such motion is not excused. Many authorities are cited in support of the rule mentioned.

■ Appellant objected to the court's charge as a whole, contending that it contained no charge upon the burden of proof relative to the several issues submitted, and that it did not instruct the jury that they should answer such issues from a preponderance of the evidence, and it did not instruct the jury as to what it meant by the term "preponderance of the evidence" as used therein.

We overrule such contention. In each of the special issues, with the exception of special issues Nos. 46 and 47, the jury is given a correct charge as to the burden of proof, in that they are instructed to find the facts inquired about from a preponderance of the evidence. No charge on burden of proof was requested by the appellant, and while each of the 45 issues preceding issues Nos. 46 and 47 contained the words "do you find from a preponderance of the evidence," appellant in his objections to the court's main charge complains of the action of the court in not instructing the jury as to where or upon whom the burden of proof lies on the various issues submitted.

In Ohio Casualty Ins. Co. v. Stewart (Tex.Civ.App.) 76 S.W.(2d) 873, 879, a case in which the objections to the charge were not sufficient to call to the attention of the court the particular error complained of, it is said:

"We do not believe that objections to charges should be couched in veiled terms so as to hide rather than express the real objection thereto." Citing case of Gulf, C. & S. F. R. Co. v. Hines (Tex.Civ.App.) 4 S.W.(2d) 641.

"An incorrect charge or definition constitutes no ground for reversal unless the specific defect therein is clearly pointed out in a proper objection thereto." Citing Perkins v. Nevill (Tex.Com.App.) 58 S.W.(2d) 50; Abilene & S. Ry. Co. v. Herman (Tex.

Civ.App.) 47 S.W.(2d) 915. "Appellant's objection to the definition of 'actual cash value' here under consideration nowhere intimates in what said definition is deficient, nor suggests to the court the elements of what appellant considered a proper definition. Appellant's objection that such definition was incorrect, misleading, and confusing was too general to require consideration and the court did not err in overruling the same." Citing Chase Bag Co. v. Longoria (Tex.Civ.App.) 45 S.W.(2d) 242; Baker Co. v. Turpin (Tex.Civ.App.) 53 S.W.(2d) 154.

In the instant case, although all 45 issues preceding issues Nos. 46 and 47 contained a proper instruction as to the burden of proof, appellant did not call attention to that fact, but objected "to the court's main charge as a whole for the reason that the same contains no charge upon the burden of proof and the jury is not instructed where or upon whom the burden of proof lies on the various issues submitted."

In Texas & New Orleans Ry. Co. v. Owens (Tex.Civ.App.) 54 S.W.(2d) 848, 856, it is said: "As we understand the rule as laid down in Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920, it is necessary for a party to not only object to the charge but state the exact grounds upon which he is objecting, and must point out a specific error in the charge so that the court may have an opportunity to correct it. This rule was applied by this court in the case of Gaddis v. Junker (Tex.Civ.App.) 29 S.W. (2d) 911."

We think that the rule laid down in that case is applicable to the objections made by appellant in the instant case. The objections made to the charge as a whole did not sufficiently call the attention of the court to the supposed error complained of.

We agree with the appellee that the court did not err in refusing to define the term "proximate cause," as contended for by the appellant, since there was no evidence in this instance raising the issue or issues upon which such contention is based, there being no evidence whatever of any new or independent cause for this collision, it conclusivly having been brought about by the negligence of one or the other of only the two parties thereto, hence the rule declared by our Supreme Court in Southland Greyhound Lines v. Cotten, 91 S.W. (2d) 326, is not applicable to the facts here presented, it being governed rather by the case of Williams v. Rodocker (Tex.Civ. App.) 84 S.W.(2d) 556, 557, and authorities therein cited.

In the Williams Case cited, it is said: "It is contended that the court erred in refusing, over appellants' objection, to include in the definition of the term 'proximate cause' as an element thereof 'new and independent cause.' The persistent idea that 'new and independent cause' is an element of the definition of the term 'proximate cause' is evidently a hang-over from the practice, now almost superseded of submitting cases to juries for a determination of the issues by a general verdict. Under that method of submission, it is the duty of the court to instruct the jury upon the law of the case. It is a part of that duty, in a negligence case, to instruct the jury as to the meaning and effect of a 'new and independent cause' where the evidence raises an issue of whether the act or omission of the defendant claimed to constitute negligence has had its causal connection with the injury broken by a 'new and independent cause.' But in cases submitted to a jury upon special issues it is not only not the duty of the court to instruct the jury upon the law of the case, but it is the court's positive duty not to do so. A definition of 'proximate cause' sufficient to inform the jury what the term means without at the same time constituting an instruction upon the law of the case will not include 'new and independent cause.' Such was the conclusion reached by this court in Texas & P. Ry. Co. v. Short, 62 S.W. (2d) 995, and reaffirmed in Sanders v. Lowrimore (Tex.Civ.App.) 73 S.W.(2d) 148 and Panhandle & S. F. Ry. Co. v. Miller (Tex.Civ.App.) 64 S.W.(2d) 1076."

The definition of "proximate cause" given by the court in his charge was as follows: "Proximate cause is a cause without which injuries complained of would not happen, and from which such injuries or some like injuries might reasonably be anticipated as a natural and probable consequence by a person of ordinary care and prudence. There may be more than one proximate cause of an event."

We think such definition constitutes all the elements of a definition of "proximate cause" called for under the evidence in the present case.

The authorities may be said to be somewhat in conflict upon the matter last discussed. However, it seems plain to us that

there must be an end somewhere to defining words, unless the special issues statute is to become a mockery.

Assignments of appellant not above discussed have been examined by us and are overruled without a detailed discussion of the same.

For the reasons pointed out, the judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

After a careful consideration of the motion for a rehearing filed by appellant, we overrule such motion.

Appellee, pending the motion of appellant, has for the first time in his reply to the motion asked that the judgment be affirmed upon the further ground that the plaintiff alleged discovered peril on the part of the driver of the defendant's truck and after such discovery negligently failed to use and exercise ordinary care and all reasonable means at hand, consistent with the safety of the truck and the driver thereof, to avoid the collision after making actual discovery of the danger and imminence thereof, and that Paul, the injured party, was in a position of peril from which he could not, or probably would not, free himself in time to escape the collision; that the evidence raised the issue of discovered peril as alleged; that the trial court submitted to the jury special issues 18 and 19, reading as follows:

"Special Issue No. 18: Do you find from a preponderance of the evidence that the driver of the truck discovered the dangerous position of the plaintiff, Paul Massey, and realized his peril, and realized that he would probably not be able to extricate himself therefrom at a time when, in the exercise of ordinary care, by the use of all the means at his command, consistent with his own safety and the safety of the defendants' property, he could have avoided the collision? Answer Yes or No as you find the fact to be."

"Special Issue No. 19: If you have answered Special Issue No. 18 in the affirmative, and only in that event, then answer: Do you find from a preponderance of the evidence that said truck driver, after he was apprised of the facts as shown by your affirmative answer to the preceding question, if you have so answered, failed to exercise ordinary care to use all the means at his command, consistent with his own safety, and the safety of the defendants' property, to avoid such collision? Answer Yes or No as you find the fact to be."

Both of such issues were by the jury answered "Yes."

We think the request of appellee is well taken, and we now affirm the judgment upon the further ground urged.

Where the pleadings and the evidence raise the issue of discovered peril and the jury finds upon that issue in favor of the injured party, the issues of primary negligence and contributory negligence become immaterial. Dallas Railway & Terminal Co. v. Bankston (Tex.Com.App.) 51 S.W. (2d) 304, 308; Hines v. Foreman (Tex. Com.App.) 243 S.W. 479; Hays v. Gainesville St. Ry. Co., 70 Tex. 602, 8 S.W. 491, 8 Am.St.Rep. 624; Baker v. Shafter (Tex. Com.App.) 231 S.W. 349; St. Louis S. W. Ry. Co. of Texas v. Cambron, 62 Tex.Civ. App. 465, 131 S.W. 1130; St. Louis, B. & M. Ry. Co. v. Cole (Tex.Com.App.) 14 S.W. (2d) 1024.

Overruled.